UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DR. DOE, M.D., DR. DOE 2,
M.D., NURSE DOE, R.N., and
SCIENTIST DOE A.S.C.P.,

        Plaintiffs,

       -v-                     3:21-CV-1078

HON. KATHY HOCHUL, Governor
of the State of New York, in her
personal and official capacity,
HOWARD A. ZUCKER,
Commissioner of the New York
State Department of Health, in his
personal and official capacity,
OUR LADY OF LOURDES
MEMORIAL HOSPITAL, INC.,
formerly known as Our Lady of
Lourdes, Inc.,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                      OF COUNSEL:

GIBSON LAW FIRM, PLLC        SUJATA SIDHU GIBSON, ESQ.
Attorneys for Plaintiffs
408 W. Martin Luther King, Jr., Street
Ithaca, NY 14850

HON. LETITIA JAMES           KASEY K. HILDONEN, ESQ.
New York State Attorney General   RYAN W. HICKEY, ESQ.
Attorneys for Defendants Hon. Kathy  Ass't Attorneys General
   Hochul and Howard A. Zucker
The Capitol
Albany, NY 12224

| | |
|---|---|
| JACKSON LEWIS P.C.<br>Attorneys for Defendant<br>677 Broadway, 9th Floor<br>Albany, NY 12207 | KRISTI RICH WINTERS, ESQ.<br>VINCENT E. POLSINELLI, ESQ. |

DAVID N. HURD
United States District Judge

## **MEMORANDUM-DECISION and ORDER**

## I. **INTRODUCTION**

On August 26, 2021, the New York State Department of Health adopted an emergency regulation that required most healthcare workers to be vaccinated against COVID-19.  N.Y. COMP. CODES R. & REGS. tit. 10, § 2.61(c) (2021).  New York was not alone in its decision to implement novel vaccine requirements for certain sectors of the workforce.  States all over the country adopted or enacted similar emergency regulations.  So too did the federal government.  Challenges to these requirements generated a wave of litigation that quickly washed over the state and federal courts.

This lawsuit is a part of the wave.  As relevant to this litigation, § 2.61 eliminated a religious exemption that had been included in the first iteration of the State's vaccination requirement.  Plaintiffs are four medical professionals with a sincere religious objection to the existing COVID-19 vaccines.  They were employed in various healthcare roles by Our Lady of Lourdes Memorial Hospital ("Lourdes" or the "Hospital"), which is located in Binghamton, New York.

On October 1, 2021, plaintiffs filed this 42 U.S.C. § 1983 action against the Hospital and two State officials involved in the enforcement of § 2.61: New York State Governor Kathy Hochul ("Hochul") and New York State Health Commissioner Howard A. Zucker ("Zucker").[1]  Plaintiffs' verified complaint alleged, *inter alia*, that Lourdes suspended or terminated them for refusing to be vaccinated.  Plaintiffs sought a temporary restraining order and a preliminary injunction that would direct the Hospital to reinstate them pending a resolution of the merits of their claims.

On October 14, 2021, plaintiffs' motion for a temporary restraining order against defendants Hochul and Zucker (the "State defendants") was denied as moot.  As the October 14 Order explained, these State defendants were already enjoined from enforcing § 2.61 as the result of a preliminary injunction entered in *Dr. A. v. Hochul*, a related case in which a separate group of healthcare professionals had raised a similar religious objection to the COVID-19 emergency regulation.  Dkt. No. 12.

The October 14 Order declined to extend this relief to include Lourdes, plaintiffs' employer.  However, the Court ordered the parties to finish briefing plaintiffs' request for a preliminary injunction.  Shortly thereafter, the State

---

[1] Zucker has resigned from his position and been replaced by Mary T. Bassett, M.D., M.P.H.  Although the Rules provide for the automatic substitution of a new officeholder in an official-capacity action, FED. R. CIV. P. 25(d), plaintiffs have also attempted to assert individual-capacity claims against this defendant.  Am. Compl. ¶ 10.

defendants moved to stay this action pending the outcome of an interlocutory appeal in *Dr. A*, the companion challenge to § 2.61 mentioned *supra*. The Court stayed the State defendants' briefing deadline on October 20, 2021, Dkt. No. 17, and granted plaintiffs' request to withdraw their motion for a preliminary injunction on October 26, 2021, Dkt. No. 20.

On October 29, 2021, a panel of the U.S. Court of Appeals for the Second Circuit vacated the preliminary injunction that had restrained the State defendants' enforcement of § 2.61. *We the Patriots USA, Inc. v. Hochul*, 2021 WL 5103443 (2d Cir. Oct. 29, 2021). Thereafter, the panel issued an opinion explaining its rationale for granting vacatur in *Dr. A*. *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir.) (per curiam), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021).[2]

On November 23, 2021, plaintiffs in this action filed a first amended class action complaint that seeks relief on behalf of themselves and a putative class of similarly situated healthcare workers. Dkt. No. 27. According to the five-count complaint, § 2.61 violates their rights under the U.S. Constitution, Title VII of the Civil Rights Act of 1964, and related state law.

On December 14, 2021, Lourdes moved under Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss plaintiffs' first amended class action

---

[2] The *Dr. A* plaintiffs petitioned the Supreme Court for certiorari, which was denied. 142 S. Ct. 552 (mem.) (Dec. 13, 2021).

complaint. Dkt. No. 29. Plaintiffs oppose. Dkt. No. 32. The Hospital has replied. Dkt. No. 33. The motion is fully briefed and will be considered on the basis of the submissions without oral argument.

## II. **BACKGROUND**[3]

On June 25, 2021, then-Governor Andrew Cuomo rescinded the COVID-19 public health emergency declaration that had been in effect across New York State for the previous eighteen months. N.Y. Exec. Order 210 (June 24, 2021). Even so, on August 18, 2021, Zucker issued an "Order for Summary Action" that required general hospitals and nursing homes to "continuously require all covered personnel to be fully vaccinated against COVID-19." *See Dr. A*, 2021 WL 4734404, at *1.

Zucker's August 18 Order included a medical exemption and an explicit religious exemption, the latter of which stated that covered entities "shall grant a religious exemption for COVID-19 vaccination for covered personnel if they hold a genuine and sincere religious belief contrary to the practice of immunization, subject to a reasonable accommodation by the employer." *Dr. A*, 2021 WL 4734404, at *2.

---

[3] The following facts are taken from plaintiffs' first amended class action complaint. Plaintiffs characterize this as a "verified" pleading, which would ordinarily be tantamount to an affidavit under 28 U.S.C. § 1746. But there are no declarations attached from any of the four named plaintiffs. To warrant treatment as equivalent to an affidavit under § 1746, a declaration or verification must be made on personal knowledge and sworn to under penalty of perjury.

On August 23, 2021, Cuomo resigned from office and Hochul assumed the governorship. *See* Am. Compl. ¶ 38; *Dr. A*, 2021 WL 4734404, at *2. That same day, New York State's Public Health & Health Planning Council, acting on a summary basis pursuant to its statutory authority under the Public Health Law, published a proposed emergency regulation on COVID-19 vaccination. *Dr. A*, 2021 WL 4734404, at *2.

The Health Council's proposal expanded the vaccination requirement to reach personnel in other healthcare settings. *Dr. A*, 2021 WL 4734404, at *2. The proposal also eliminated the explicit religious exemption language found in Zucker's August 18 Order. *Id*. The August 18 Order was superseded when the Health Council adopted § 2.61 on August 26, 2021. *Id*. According to the first amended class action complaint, Hochul has since made "statements to the press [that] clarify that the removal [of the religious exemption] was intentional and motivated by animus." Am. Compl. ¶ 39.

The four named plaintiffs "are medical professionals working for Ascension-Lourdes hospital in Binghamton, New York[,] whose sincere religious beliefs compel them to refuse vaccination with the available COVID-19 vaccines." Am. Compl. ¶ 12. According to the first amended complaint, the plaintiffs "were suspended and terminated in reliance on the stayed Vaccine Mandate on September 27, 2021." *Id*. ¶ 15.

The first amended complaint alleges that Lourdes "has expressed an intolerance for different religious viewpoints on vaccination, especially among Catholics." Am. Compl. ¶ 109. Although the Hospital purports to offer a religious exemption under its corporate policy, the complaint alleges that "supervisors informed employees . . . that they would not consider granting religious exemptions to any Catholics or people whose religious beliefs conflicted with any recognized orthodoxy or dogma of so-called 'sanctioned' religious leaders." *Id.* ¶ 114.

Each named plaintiff alleges that they sought from Lourdes a religious exemption to the vaccination requirement. Am. Compl. ¶¶ 142; p. 25 ¶¶ 5, 13; p.26 ¶ 23.[4] Three of the plaintiffs received from the Hospital a form letter indicating that their refusal to comply with the vaccination requirement would be deemed a voluntary resignation. *Id.* ¶¶ 144; p. 26 ¶14; p. 27 ¶ 24.

The exception was plaintiff "Dr. Doe 2," a control group participant in an FDA trial. Am. Compl. p. 25 ¶ 7. Although it refused to grant her a religious exemption, the Hospital has granted her a medical exemption. *Id.* ¶ 8. She is still employed at the Hospital. *Id.* The others have been suspended or terminated. Am. Compl. ¶¶ 144–45; p. 26 ¶ 14; p. 27 ¶ 26.

---

[4] The amended complaint is sequentially numbered until paragraph 147, where the numerical values reset to "1." Am. Compl. at p.24. Beyond the first 147 paragraphs, the Court will cite to the CM/ECF page number and the individual paragraph to assist the reader.

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the level of speculation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). So while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## IV. DISCUSSION

Plaintiffs allege violations of: (1) the First Amendment's Free Exercise and Establishment Clauses; (2) the Fourteenth Amendment's Equal Protection Clause; (3) the Supremacy Clause; and (4) Title VII. Plaintiffs' also seek a (5) judgment declaring § 2.61 unconstitutional under the federal and state constitutions.

Lourdes has moved to dismiss all of the claims asserted against the Hospital. Def.'s Mem., Dkt. No. 29-1. As for the alleged constitutional violations, the Hospital contends that these claims "have absolutely nothing to do with Lourdes, as the Hospital is not a state actor." *Id*. at 5. And as for the Title VII claim, the Hospital argues that plaintiffs "have admittedly failed to exhaust their administrative remedies." *Id*.

In opposition, plaintiffs claim Title VII's exhaustion requirement should be waived because the administrative agency was "too busy to provide adequate relief." Pls.' Opp'n, Dkt. No. 32 at 8. Plaintiffs further claim that their constitutional claims remain viable against Lourdes because its "actions have shown it to be not merely a bystander, but a fully willful participant acting jointly alongside the state to thwart the civil rights of its employees, even when it had been court-ordered not to do so." *Id*. at 13.

### A. Section 1983 & State Action

"Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (quoting *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005)).

"[S]tate action requires both an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of

conduct imposed by the State or by a person for whom the State is responsible,' *and* that 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

As the Supreme Court has recognized, "there is no single test to identify state actions and state actors." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 294 (2001). Although a host of factors can bear on this question, three main tests have emerged:

> For purposes of section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the state," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the state ("the public function test").

*Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (cleaned up). New York courts recognize the same "state action" requirement and apply a similar set of three tests. *Liberty Sackets Harbor, LLC v. Vill. of Sackets Harbor*, 2018 WL 4609129, at *9 (N.D.N.Y. Sept. 25, 2018) (Suddaby, J.), *aff'd*, 776 F. App'x 1 (2d Cir. 2019) (summary order).

Upon review, plaintiffs' constitutional claims against Lourdes must be

dismissed. Plaintiffs argue it is "uncontested" that the Hospital "loudly, publicly justified its actions by reliance on the Vaccine Mandate." Pls.' Opp'n at 12. And in their first amended class action complaint, plaintiffs allege that the Hospital is part of Ascension, a large Catholic health system that "has expressed an intolerance for different religious viewpoints on vaccination." Am. Compl. ¶¶ 109–10.

This kind of allegation is nowhere near enough to plausibly allege state action. "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Fabrikant*, 691 F.3d at 207. It is undisputed that Lourdes and its parent organization are private entities. Private conduct, "no matter how discriminatory or wrongful," does not satisfy the "state action" requirement. *Gill v. Silver Invs., Inc.*, 413 F. Supp. 3d 123, 127 (E.D.N.Y. 2016).

As a health care provider, Lourdes is almost certainly licensed in, and is surely extensively regulated by, New York State. But that is not sufficient trigger "state action," either. *See, e.g.*, *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974) ("The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment."); *Schlein v. Milford Hosp.*, 561 F.2d 427, 428 (2d Cir. 1977) ("The mere fact that [the State] regulates the . . . private hospital does not per se make the acts of the hospital . . . the acts of the state.").

Plaintiffs' allegations about Lourdes's and/or Ascension's ideological alignment with Hochul's public statements cannot save these constitutional claims. "A private actor can only be a willful participant in joint activity with the State or its agents if the two share some common goal to violate the plaintiff's rights." *Betts v. Shearman*, 751 F.3d 78, 85 (2d Cir. 2014) (cleaned up). In order to satisfy this requirement, the plaintiff must "allege facts demonstrating that the private entity acted *in concert with* the state actor to commit an unconstitutional act." *Id.* (emphasis added).

Plaintiffs have not done so. Even drawing all inferences in their favor, what plaintiffs have alleged is a course of *independent* conduct. The first amended class action complaint describes a situation in which one defendant (a public official) has expressed in religious terms her support for a State regulatory requirement that allegedly aligns with another defendant's (the private employer) own viewpoint on the subject.

But a private entity's decision to comply with a State regulation does not transform into "state action" merely because public and private viewpoints happen to align. *Cf. Estiverne v. Esernio-Jenssen*, 910 F. Supp. 2d 434, 442 (E.D.N.Y. 2012) ("Mere cooperation with a state official or investigatory agency is insufficient to establish state action."). Instead, what a plaintiff must allege is a set of facts that plausibly describe something other than independent conduct by two actors. *See, e.g.*, *Missere v. Gross*, 826 F. Supp.

2d 542, 567 (S.D.N.Y. 2011) (observing that "[t]he touchstone of joint action is often a plan, prearrangement, conspiracy, custom, or policy shared" by the private actor and the [state] actor"); *Bang v. Utopia Rest.*, 923 F. Supp. 46, 49 (S.D.N.Y. 1996) ("[T]he true state actor and the jointly acting private party must agree to deprive the plaintiff of rights guaranteed by [ ] law.").

Finally, to the extent that plaintiffs have alleged that Lourdes acted in a discriminatory or otherwise wrongful manner by suspending them while the enforcement of § 2.61 was stayed in the *Dr. A* action, it bears emphasizing that only the State defendants were enjoined in *Dr. A*. Thus, while the Hospital's alleged conduct might have somehow violated some other provision of federal or state law (*e.g.,* Title VII), that fact does not transform it into "state action" for purposes of a constitutional claim. Accordingly, plaintiffs' constitutional claims must be dismissed against the Hospital.

## B. Title VII & Administrative Exhaustion[5]

"As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir.

---

[5] "The failure to exhaust administrative remedies is an affirmative defense, for which defendant bears the burden of proof." *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 594 n.5 (E.D.N.Y. 2013). Even so, it can properly be raised on a motion to dismiss "where the complaint itself establishes the circumstances required as a predicate to a finding that the affirmative defense applies." *In re Sept. 11 Prop. Damage & Bus. Loss Litig.*, 481 F. Supp. 2d 253, 258 (S.D.N.Y. 2007).

2003). After a charge has been filed, the EEOC has 180 days to dismiss the charge or file a civil action. 42 U.S.C. § 2000e-5(f)(1). "Regardless of whether the EEOC acts on a charge, the EEOC must issue a right-to-sue notice 180 days after the filing of that charge." *Hernandez v. Premium Merchant Funding One, LLC*, 2020 WL 3962108, at *3 (S.D.N.Y. July 13, 2020). "A complainant then has 90 days to bring suit against the employer." *Id.*

Upon review, plaintiffs' Title VII claims against Lourdes must be dismissed. The first amended class action complaint alleges that the named plaintiffs have filed EEOC charges and requested right-to-sue letters, but were informed that "it could take up to 180 days for the letter to issue." Am. Compl. at p.37 ¶¶ 206–07. According to plaintiffs, the fact that the 180-day period set forth in the statute has not yet elapsed is irrelevant because a right-to-sue letter is just a "formality." *Id.* ¶ 213.

Plaintiffs are incorrect. As the Second Circuit has explained, "[t]he purpose of this exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998) (cleaned up). Because the purpose of this remedial scheme "would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC," *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 26 (2d Cir. 1985), a "right-to-sue letter is a necessary prerequisite to filing suit," *Syeed v. Bloomberg L.P.*, –F.

Supp. 3d–, 2021 WL 4952486, at *12 (S.D.N.Y. Oct. 25, 2021) (quoting *Newsome v. Berman*, 24 F. App'x 33, 34 (2d Cir. 2001) (summary order)).

Plaintiffs concede that they filed this action in federal court before receiving any right-to-sue letters. Accordingly, their Title VII claims against Lourdes must be dismissed. In an effort to avoid this result, plaintiffs claim that the exhaustion requirement should be waived in the interests of justice and judicial economy. Pls.' Opp'n at 7–11. In plaintiffs' view, "[t]he EEOC is too busy to timely respond to these complaints." Am. Compl. at p. 37 ¶ 208; *see also* ¶¶ 209–13.

"The weight of precedent demonstrates that administrative exhaustion is not a *jurisdictional* requirement; rather, it is merely a precondition of suit and, accordingly, it is subject to equitable defenses," including waiver, estoppel, and equitable tolling. *Fowlkes*, 790 F.3d at 384. "Moreover, exhaustion of administrative remedies is not required if adequate remedies are not reasonably available." *Fernandez v. Chertoff*, 471 F.3d 45, 58 (2d Cir. 2006). For example, administrative remedies may be excused if (a) the agency lacks institutional competence to resolve the particular type of issue presented; (b) the challenge is to the adequacy of the procedure itself; or (c) the agency lacks authority to grant the kind or relief requested. *Id*.

But merely alleging that the EEOC is too busy is insufficient to warrant equitable relief. "The 180-day window provides a critical opportunity for the

aggrieved parties to conciliate and is an integral component of the Title VII scheme." *Gibb v. Tapestry, Inc.*, 2018 WL 6329403, at *6 (S.D.N.Y. Dec. 7, 2018). Notably, in opposition to dismissal plaintiffs' counsel has submitted a declaration in which she explains that she has repeatedly "called and communicated with the EEOC office" and that a representative has finally relented, assuring her that right-to-sue letters "were being issued" and are now "either in the mail or arriving shortly." Gibson Decl., Dkt. No. 32-1.

Even if the Court were to consider these extraneous facts on a motion to dismiss, they would not save plaintiffs' claims.[6] "Congress clearly expressed its will that a private Title VII suit can only follow after charges have been pending before the EEOC for at least 180 days." *Gibbs*, 2018 WL 6329403, at *6. Although the courts are divided on whether the EEOC may issue a valid right-to-sue letter before the 180-day waiting period, "that debate concerns plaintiffs who received an early right-to-sue letter *before* filing their Title VII claims in district court." *Syeed*, 2021 WL 4952486, at *13. Accordingly, plaintiffs' Title VII claims must be dismissed. *Id.* (concluding same where the plaintiff "received an early right-to-sue letter months after filing her claims").

---

[6] Notably, some courts have held that a hastily issued right-to-sue letter is invalid, especially where "no meaningful investigation of plaintiffs' claims was conducted, and no serious attempt to resolve the dispute was undertaken prior to initiating an action in federal court." *Gibb*, 2018 WL 6329403, at *6.

- 17 -

## V. CONCLUSION

Therefore, it is

ORDERED that

1. Lourdes's motion to dismiss is GRANTED;

2. The claims in the first amended class action complaint are DISMISSED to the extent they are asserted against Lourdes; and

3. Lourdes is DISMISSED as a defendant in this action.

IT IS SO ORDERED.

Dated: February 14, 2022
       Utica, New York.

David N. Hurd
U.S. District Judge